# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

CHEYANNE WOODS,

    Petitioner,

v.                                  CASE NO. 6:17-cv-5-Orl-31KRS

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

    Respondents.
_____/

## ORDER

This cause is before the Court on a Petition for Writ of Habeas Corpus ("Petition," Doc. 1) filed pursuant to 28 U.S.C. § 2254. Respondents filed a Response to the Petition ("Response," Doc. 12) in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases for the United States District Courts*. Petitioner filed a Reply to the Response. (Doc. 14).

Petitioner alleges five claims for relief in the Petition. For the following reasons, the Petition is denied.

## I. PROCEDURAL HISTORY

Petitioner and five co-defendants were charged by indictment in the Ninth Judicial Circuit Court in and for Orange County, Florida with first degree murder with a firearm (Count One), burglary of a dwelling with an assault or battery (Count Two), and robbery with a firearm (Count Three). (Doc. 12-2 at 5-7). Petitioner entered into a negotiated plea

whereby she agreed to plead guilty to Count Three and in exchange, the State agreed to a sentence cap of twenty-seven years in prison. (*Id.* at 10-12). The trial court sentenced Petitioner to a twenty-year term of imprisonment. (*Id.* at 71). Petitioner appealed, and the Fifth District Court of Appeal ("Fifth DCA") affirmed *per curiam*. (*Id.* at 135).

Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. (*Id.* at 139-62). The trial court summarily denied relief. (*Id.* at 164-66). Petitioner appealed, and the Fifth DCA affirmed *per curiam*. (*Id.* at 230).

## II. LEGAL STANDARDS

### A. Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

The first task of a federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. *See Marshall v. Sec'y, Fla. Dep't of Corr.*, 828

F.3d 1277, 1285 (11th Cir. 2016). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court recently stated that a court should "look through" any unexplained decision "to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192, (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. *Id.* at 1192–93, 1195–96.

If the claim was adjudicated on the merits, § 2254 provides "two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B. Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1] *Id.* at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

---

[1] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### III. ANALYSIS

#### A. Claim One

Petitioner alleges that her sentence was not legally justified and is disproportionate to her co-defendants' sentences. (Doc. 1 at 5). Petitioner notes that her two female co-defendants received six-year sentences. (*Id.* at 5-6). Petitioner raised this claim in a motion for modification of sentence, and the trial court denied the motion. (Doc. 12-2 at 76-82). Petitioner also raised this claim on direct appeal. (*Id.* at 95-102). The Fifth DCA affirmed *per curiam*. (*Id.* at 135).

The Supreme Court of the United States has not recognized a federal constitutional right to a sentence that is proportionate to one's co-defendant. *See Pulley v. Harris*, 465 U.S. 37, 43-44 (1984); *Bush v. Singletary*, 99 F.3d 373, 375 (11th Cir. 1996). Proportionality review is required by Florida law in some instances; however, even if Petitioner's sentence was disproportionate, "[a] federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law." *Pulley*, 465 U.S. at 41. Therefore, Petitioner is not entitled to relief on this claim.

Alternatively, the Court concludes that Petitioner's sentence is not impermissibly

disproportionate. Florida courts have held that a defendant is not entitled to a downward departure based on proportionality if the co-defendants are not equally culpable. *State v. Diaz*, 189 So. 3d 896, 901 (Fla. 3d DCA 2016). The *Diaz* court noted that a trial court would only be "'justified in departing downward to meet a codefendant's sentence if the record established beyond a reasonable doubt that the culpability of the defendant was no greater than that of the codefendant.'" *Id.* (quoting *Sanders v. Satte*, 510 So. 2d 296, 298 (Fla. 1987)).

During Petitioner's sentencing proceeding, defense counsel argued for a youthful offender sentence. (Doc. 12-2 at 60-68). The trial court determined that a youthful offender sentence was not warranted. (*Id.* at 71). In making this decision, the trial court stated the following:

> [I]t was clear throughout the trial and throughout this process that you are really intelligent, you're a very intelligent girl. And it's also clear that since this charge, you've done everything you could possibly do to make it a good situation and to benefit society and other people. I have no doubt about that.
>
> However, the reality of the facts of this case are that it wouldn't have occurred had it not been for you, that you were the planning part behind it. And unfortunately, we can all do things in our life – it doesn't make us bad people, but we can all do things that –one bad thing can result in –life-altering for many people, and this was one of those.

(*Id.* at 71).

The trial court considered Petitioner's degree of involvement in the crime and concluded that she was more culpable than some of her co-defendants because she helped to plan the crimes. In light of this finding, Petitioner cannot show that her sentence

6

is disproportionate. The state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, Claim One is denied.

B. **Claim Two**

Petitioner alleges that the trial court erred by denying her motion for reconsideration. (Doc. 1 at 8). Following the sentencing proceeding, Petitioner filed a document entitled "Written Objection and Motion for Reconsideration." (Doc. 12-2 at 76). Petitioner sought reconsideration or modification of her sentence pursuant to Rule 3.800 of the Florida Rules of Criminal Procedure. (*Id.* at 76-80). The trial court denied the motion. (*Id.* at 82). Petitioner appealed, and the Fifth DCA affirmed *per curiam*. (*Id.* at 135).

Petitioner's claim relates to a perceived error in the state post-conviction proceedings. *See Quince v. Crosby*, 360 F.3d 1259, 1261-62 (11th Cir. 2004) (concluding that "[w]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief"); *Carroll v. Sec'y Dep't of Corr.*, 574 F.3d 1354 (11th Cir. 2009). The denial of Petitioner's motion for reconsideration is a defect in a collateral proceeding and as such, is not subject to review. Additionally, the trial court's decision to forego modifying Petitioner's sentence based on proportionality considerations is an issue of state law and does not provide a basis for federal habeas relief. *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992); *see also Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005). Accordingly, Claim Two is denied.

### C. Claims Three and Six

Petitioner contends in Claim Three that trial counsel was ineffective for advising her that if she entered a guilty plea and testified truthfully against her co-defendants, the State would recommend that "she receive 10 years incarceration with the special request that Petitioner be sentenced as a youthful offender." (Doc. 1 at 10). Petitioner states that she questioned counsel regarding the provision in the plea agreement, which stated there was a sentence cap of twenty-seven years, and counsel told her "not to worry, the state promised not to recommend . . . more than ten years." (*Id.* at 10-11). In Claim Six, Petitioner asserts that trial counsel affirmatively misadvised her concerning the sentence she would receive and as a result, her plea was involuntary. (*Id.* at 16).

Petitioner raised these claims in her Rule 3.850 motion. (Doc. 12-2 at 148-57). The trial court summarily denied the claims, finding Petitioner could not demonstrate prejudice. (*Id.* at 165). The trial court reasoned that although the State did not recommend a ten-year sentence, it did highlight all of the positive actions taken by Petitioner. (*Id.*). Moreover, the trial court noted that during the plea colloquy, Petitioner stated she understood that she was facing up to twenty-seven years in prison and no one had promised her anything other than what was stated on the record. (*Id.*). The trial court found that Petitioner was bound by her sworn statements during the plea colloquy. (*Id.* at 165-66). The trial court also noted that the State entered a nolle prosequi with regard to Counts One and Two. (*Id.* at 166). The Fifth DCA affirmed *per curiam*. (*Id.* at 230).

In analyzing the constitutionality of a guilty plea, a reviewing court must

determine that the plea represents a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). Additionally, the Supreme Court has determined that "the representations of the defendant . . . [at a plea proceeding] constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). The Eleventh Circuit Court of Appeals has held that "[a] reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991).

The written plea and sentencing agreement, initialed and signed by Petitioner, provides that she was entering a guilty plea to Count Three, and in exchange, the State would dismiss Counts One and Two. (Doc. 12-2 at 11). Petitioner also agreed to testify truthfully against her co-defendants. (*Id.* at 10). The plea agreement provided the minimum term, 138.3 months in prison, and the maximum term, twenty-seven years in prison. (*Id.* at 11). Furthermore, the plea stated that Petitioner could request a youthful offender sentence or downward variance; however, the trial court was under no obligation to impose such a sentence. (*Id.*). The agreement does not contain a provision indicating that the State agreed to a ten-year or youthful offender sentence. (*Id.*).

During the plea colloquy, the parties summarized the agreement, and there was

no mention of any promises with regard to a ten-year or a youthful offender sentence. (*Id.* at 19-20). Petitioner stated that she had read the agreement, went over the terms with her attorneys, and understood those terms. (*Id.* at 20-21). Petitioner stated that her attorney answered all of her questions and she was satisfied with his services. (*Id.* at 21). The trial court explained that the maximum term of imprisonment was twenty-seven years, and Petitioner advised the court that she understood. (*Id.* at 23). Petitioner stated that she was not forced to enter the plea, nor had anyone promised her anything other than what the parties had stated on the record. (*Id.*). The Assistant State Attorney reiterated that pursuant to the plea agreement, the maximum sentence Petitioner would receive was twenty-seven years, but also noted that the sentence would be up to the trial judge. (*Id.* at 27-28). Petitioner affirmed that she understood the provisions of the plea. (*Id.*) The trial court found that the plea was freely, voluntarily, and intelligently made. (*Id.* at 25).

Petitioner's representations to the trial court are presumed true, and Petitioner has not established that the Court should overlook them. *Blackledge*, 432 U.S. at 73-74. Petitioner was twice advised of the maximum sentence and the prosecutor stated on the record that the final sentence would be determined by the trial judge. Petitioner had the opportunity to tell the trial court she believed she would be sentenced to ten years as a youthful offender. Instead, Petitioner told the trial court that no other promises or representations had been made. Furthermore, the prosecutor noted during sentencing that he had told Petitioner he would not request any specific sentence in this case. (Doc.

12-2 at 57-58). Petitioner did not object to this statement or tell the trial court that she had been promised a ten-year sentence. (*Id.*).

In her Reply, Petitioner contends that this Court should consider her juvenile status and the fact that due to her age and immaturity, she relied on her attorney's representations and did not fully understand the consequences of her plea. (Doc. 14 at 6-9). Petitioner states that federal courts have recognized that juveniles should be treated differently and it cannot be said that she "could comprehend as an adult." (*Id.* at 8-9). Petitioner argues that it would be improper to hold her to the same standard or level of understanding as that of an adult. (*Id.* at 9).

The cases cited by Petitioner relate to sentencing juveniles to death or life imprisonment without parole, both of which are unconstitutional. *See Roper v. Simmons*, 543 U.S. 551 (2005) (holding that the Eighth and Fourteenth Amendments prohibit imposing a death sentence on those offenders who were under the age of eighteen when their crimes were committed); *Miller v. Alabama*, 567 U.S. 460 (2012) (holding that a sentence of mandatory life imprisonment without parole for those under the age of eighteen violates the Eighth Amendment); *Graham v. Florida*, 560 U.S. 48 (2010) (prohibiting sentences of life imprisonment without parole for juvenile offenders not convicted of homicide). These cases are not relevant to Petitioner's claim because she was not sentenced to death nor was she sentenced to life without the possibility of parole.

Petitioner also cites to *J.D.B. v. North Carolina*, 564 U.S. 261 (2011) (holding that a juvenile's age may be considered as a factor in determining whether a waiver of *Miranda*

rights was voluntary) to support her contention that due to her age, her answers in the plea colloquy should be scrutinized. Petitioner essentially asks the Court to extend the holding of *J.D.B.* to the context of a plea colloquy. However, the Court has found no legal precedent applying the holding of *J.D.B.* in such a manner and declines to do so here.[2]

Petitioner fails to show that counsel affirmatively misadvised her regarding the sentence she received. *See Burt v. Titlow*, 571 U.S. 12, 15 (2013) (when a state prisoner "asks a federal court to set aside a sentence due to ineffective assistance of counsel during plea bargaining, [federal] cases require that the federal court use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt.'" (citing *Cullen v. Pinholster*, 563 U.S. 170 (2011)). Moreover, Petitioner cannot demonstrate prejudice because a reasonable probability does not exist that but for counsel's actions, that she would not have entered the plea and instead would have gone to trial. *Hill*, 474 U.S. at 56. Petitioner faced a life sentence if convicted at trial. Petitioner made a choice to enter a guilty plea in order to avoid a harsher sentence. The state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, Claims Three and Six are denied pursuant to § 2254(d).

---

[2] Additionally, the Court notes that Petitioner was seventeen years old at the time of the plea hearing. In *J.D.B.*, the juvenile suspect was thirteen years old. 564 U.S. at 265. The Supreme Court's holding was made in light of the fact that custodial interrogations are "inherently coercive" and generally "blur the line between voluntary and involuntary statements." *Id.* at 269. The plea colloquy was not a coercive interrogation.

D. **Claim Four**

Petitioner contends that her due process rights were violated when the trial court relied on evidence presented at her co-defendants' trial to determine her sentence. (Doc. 1 at 13). Respondents argue that this claim is procedurally barred. (Doc. 12 at 15).

Petitioner raised this claim in her Rule 3.850 motion, and the trial court summarily denied relief, concluding that the claim was procedurally barred because claims of trial court error are not cognizable in a motion for post-conviction relief. (Doc .12-2 at 166). The Fifth DCA affirmed *per curiam*. (*Id.* at 230).

A per curiam affirmance of a trial court's finding of procedural default is a sufficiently clear and express statement of reliance on an independent and adequate state ground to bar consideration by the federal courts. *Harmon v. Barton*, 894 F.2d 1268, 1273 (11th Cir. 1990); *see also Ferguson v. Sec'y Dep't of Corr.*, 580 F.3d 1183, 1218 (11th Cir. 2009). "[T]he clear inference to be drawn from the appellate court's per curiam affirmance of the trial court's decision explicitly based on procedural default is that the court accepted not only the judgment but the reasoning of the trial court." *Harmon*, 894 F.2d at 1273. Therefore, this Court will apply the state procedural bar.

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, where a

"constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Petitioner contends that the procedural default is due to appellate counsel's failure to raise this claim on direct appeal. (Doc. 14 at 2-4). A claim of ineffective assistance of appellate counsel can be cause for procedural default if that claim also was exhausted in the state court. *See Brown v. United States*, 720 F.3d 1316, 1333 (11th Cir. 2013); *Dowling v. Sec'y for Dep't of Corr.*, 275 F. App'x 846, 847-48 (11th Cir. 2008) (citing *Edwards v. Carpenter*, 529 U.S. 446, 450-51 (2000)). However, Petitioner did not exhaust a claim of ineffective assistance of appellate counsel in the state court by filing a petition for writ of habeas corpus. Therefore, Petitioner fails to satisfy any of the exceptions to the procedural default bar. Accordingly, this claim is procedurally barred.

### E. Claim Five

Petitioner argues that the trial court erred when it denied her Rule 3.850 motion without first conducting an evidentiary hearing. (Doc. 1 at 15). Petitioner's challenge to the trial court's failure to hold an evidentiary hearing is a defect in the state collateral proceeding and therefore, is not subject to habeas relief. *Carroll v. Sec'y, Dep't of Corr.*, 574 F.3d 1354, 1365 (11th Cir. 2009); *see also Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004). Accordingly, this claim is denied.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

### IV. CERTIFICATE OF APPEALABILITY

This Court should grant an application for certificate of appealability only if the Petitioner "makes a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009). When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a Petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *Lamarca*, 568 F.3d at 934. However, a prisoner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

The Court concludes that Petitioner has not made the requisite showing in these circumstances. Petitioner is not entitled to a certificate of appealability.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus filed by Cheyanne Woods (Doc. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. Petitioner is **DENIED** a certificate of appealability.

3. The Clerk of the Court is directed to enter judgment and close the case.

**DONE AND ORDERED** in Orlando, Florida, this 29th day of June, 2018.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies to:
OrlP-3 2/28
Counsel of Record
Cheyanne Woods